We'll hear argument next in No. 183363, Marquez v. Garland. Good morning and may it please the Court, Jennifer Gale, third petitioner, will say that Ms. Garland represents. You're going to need to speak up. Of course. Thank you. I'll be close. The Court in Matthews did not reach whether matter of storm could be applied retroactively to pre-2010 convictions for misdemeanor child endangerment. But Judge Karnian, who dissented, did consider that issue and unequivocally concluded that such application would be impermissible. The government is asking the Court to disagree with the well-reasoned opinion of Judge Karnian, and we are asking this Court to increase it. I'd like to address two main points. First, in 2006, when Mr. Marquez pleaded guilty, the agency's operative definition, to use Judge Karnian's term, of child abuse, did not extend to offenses like near-discriminatory endangerment that only require a risk of harm and no actual harm. And second, Mr. Marquez's reliance on that operative definition was reasonable. To the first point, BIA's operative definition from 1999 to 2008 came from BIA's decision in Rodriguez-Rodriguez, which looked to the black self-dictionary definition of child abuse. That definition required cruelty to a child. Rodriguez-Rodriguez involved sexual child abuse, right? So the reference to child abuse was dictum? That's correct, Your Honor. At the time that matter of Rodriguez-Rodriguez came down, the child abuse framework of the building was new. It had only been enacted three years prior. And because there was no definition in the statute or cross-reference, the BIA looked to the dictionary definition at the time of child abuse, which required cruelty, and in fact, required actual harm to a child. That's a bit indirect, isn't it? You're saying that Rodriguez-Rodriguez imported an actual harm requirement through a dictionary definition that had that? Is that the argument? Congress chose not to define child abuse when it enacted the Oakland 782EI in 1996. And the BIA chose, when considering its options for multiple steps for construction, to look to the dictionary definition at the time for what child abuse meant. And that decision and the language that the BIA chose to use was subsequently considered authoritative in multiple unpublished agency decisions as well as circuit opinions before and after Mr. Rodriguez-Rodriguez appealed to the first in the Fifth Circuit, excuse me, in 2005, and the Eighth Circuit's opinion, and it was Rodriguez-Rodriguez. The question I have is whether it was indeed well established that you had to have actual harm as opposed to the likelihood of harm. I mean, in Sorum, the agency says it wasn't clear, we're filling in a void. Why is that wrong? We believe that the court needs to look past that language. As this court considered in OBEA and the retroactivity of Diosurago. Why was it so well settled that you had to have actual harm? I don't know that I see that in Rodriguez-Rodriguez. You could imply it, I suppose. And again, it was not about child abuse. It was about sexual child abuse. As I was explaining, Your Honor, the language that Rodriguez-Rodriguez chose to use to define child abuse was given Chevron deference, both by the Fifth Circuit, the Eighth Circuit, and actually by Your Honor, Judge Radji, in this court's 2007 decision in William B. Churchill. And Your Honor noted the Rodriguez-Rodriguez definition of child abuse when acknowledging the new grounded profitability. But does the Rodriguez-Rodriguez definition say you have to have actual harm? Rodriguez-Rodriguez says to, again, the Black's Law Dictionary of child abuse. Does the Black's Law Dictionary say you have to have actual harm? What says you have to have actual harm? That's what I'm trying to find out. Child abuse at the time was defined as any form of cruelty to a child's physical, moral, or mental well-being. And in turn, cruelty was defined as the intentional and malicious infliction of his or her mental suffering. This is the Black's definition? That's correct, Your Honor. And is there a way to explain that operative definition in Rodriguez-Rodriguez was materially changed in SORA? Actually, you know, I'm looking at Rodriguez-Rodriguez, and the wording is, by its common usage, child abuse encompasses actions or inactions, etc. You know, it's arguably similar to the at a minimum language. I don't know that it's intended to be exclusive. Or at least one could argue that it's, you know, that it covers this, but not necessarily this is only what it covers. I think what's instructive, Your Honor, is what other courts subsequent to Rodriguez-Rodriguez found, which is that the VA's interpretation of the term was authoritative and reasonable and should be afforded deference. And when matter of SORM removed the actual harm requirement necessary to sustain the charge of removability, that was a material change in interpretation that would satisfy this Court's consideration under RUGO  You know, I agree it was a material change. The question is whether it's an abrupt departure or filling in the void. Why is it the former? I'll answer Your Honor's question in two parts. Okay. In reality, we are not always going to have the binary of a void that needs to be filled or an explicit abrupt departure. But we do believe that individuals until 2010 would not have been on notice that no harm would have been required to sustain the child abuse grounded removability. And that is exactly what Judge Carney said in her dissent when she discusses this material change in the VA's interpretation of child abuse. We believe that this Court should consider her language akin to and relied upon as the basis for some sort of safe harbor. Because in that case, the Board had a very broad reading of sexual abuse and it said that there was no actual touching required in that case. So to turn around and say that somehow that case holds or is authority for the proposition that actual harm was required at that time, to me, it seems like a stretch with all due respect to Judge Carney. I urge the Court to look carefully at Rodriguez-Rodriguez and also to look carefully at Obeah and Diaz-Lizarrava. Because in the latter line, it's clear that there was a departure and it's clear from the Board's language. They say from our earliest days, we had a narrow view. Now we update our existing jurisprudence. So the narrow view before was that you didn't even have a permanent intent to take. Now they're updating it and saying it's broader. There's no narrow view enunciated in Rodriguez-Rodriguez. It simply hadn't been decided yet. And if it hadn't been decided, then you can't say that the petitioner reasonably relied on it. So we ultimately don't think that the retroactivity issue, while it's complicated, is a hard one. I also would like to add that it's important that the Court decide there is no jurisdiction over the discretionary determination. And I think Carcano resolved that issue squarely. And despite no reason to the contrary, Carcano decided in the voluntary departure context. There shouldn't be any difference in the cancellation of her removal. It's a discretionary determination. And the Court and the agency should look to everything and weigh it appropriately. If there's no questions, thank you. Thank you. Thank you, Counsel. Ms. Vail, you have two minutes reserved for rebuttal. I'd like to address one point that the government just raised. The government says that we should not be equating OBEGA with this instant petition. However, the Court made clear in that decision that the agency had written inconsistently on the representative team's requirement for theft offenses, but that doing so does not mean that a change later on would not be considered an abrupt departure. And that's what we have here. The agency and federal courts have addressed what the crime of child abuse meant. There may have been some discrepancies, but that does not change the fact that Matter of Sorum abruptly changed course and eliminated that harm requirement entirely. And by doing so, made countless non-citizens who had relied on the language, the operative language used for over a decade to define child abuse, and had ordered their affairs around that language. To close, the threshold issue here is whether Matter of Sorum can be applied retroactively. In essence, whether Mr. Marquez is removable. We employ this Court to listen to Judge Kermit's reasoning and follow her conclusion. If this Court were to disagree, and it did need to reach our second issue of this petition, namely the cancellation of the removable issue and this Court's discretion to address it, we would ask this Court to remand to the agency, given the immigration judge and VA's error of law in presuming the truth in unsubstantiated charging documents, which resulted in abrupt dismissal or in non-criminal dispositions, to allow the immigration judge to again consider Mr. Marquez's equities while giving the appropriate amount of weight to those charging documents. Thank you. Thank you, Counsel. We'll take the case and the other cases argued this morning under advisement. The remaining two cases are on submission, so I'll ask the courtroom deputy to adjourn. Thank you. Thank you.